W. H. (HODGE) THOMAS V. THE STATE.

No. 22698. Delivered January 26, 1944.
Rehearing Denied February 23, 1944.

46

The opinion states the case.

*Justice, Moore & Justice*, of Athens, and *G. O. Crisp*, of Kaufman, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the unlawful killing of Marion Smith, and upon his trial he was assessed a penalty of forty years in the State penitentiary, hence this appeal.

The facts are rather gruesome, and show a long continued association between appellant and the deceased, who was a man about 70 years of age. Appellant was manager of the local cotton oil mill; the deceased was his employee. Both seemed to be addicted to the use of alcoholic liquors. On the night of the alleged homicide, these two friends were in possession of some intoxicating liquors, and in appellant's home drinking together. At some time during the night Marion Smith was killed, there being some twenty-four knife wounds on his body, as well as eleven contusions. His head had been beaten, his cheek bones both broken, his nose mashed, his throat cut, four ribs broken, and one fifteen inch cut in the abdomen, as well as bruises over the body, evidencing the fury of the long continued assault.

Appellant claimed to have been a heavy drinker of intoxicating liquors for many years prior to such occurrence, and to such an extent that he was in an insane condition at the time of the killing; that he was suffering from a form of insanity known as delirium tremens; that he was therefore immune from punishment by virtue of such a diseased condition of the mind.

It was also shown by a res gestae statement that at the scene of the trouble, and upon arrival of outsiders, appellant said that a man whom he did not know had appeared at his home during the night and attacked appellant, grasping him by the throat; that appellant produced his knife and began to cut this stranger, who then said: "Have mercy on me, I am a German." This story was repeated by appellant, and a portion thereof committed to writing, which writing finally found its way into the statement of facts, the exculpatory portion thereof being offered by appellant's attorneys.

Appellant's attorneys evidence their diligence herein by filing an exhaustive brief of 39 pages, citing numerous authorities, which we have read with interest and appreciation. However, we will attempt to base this opinion on the bills of exceptions which present the claimed errors in the trial.

48

Bill of exceptions No. 1 relates to the court's charge wherein he charged the jury relative to the appellant's defense of insanity, the insanity offered by appellant being based on the fact that on account of long continued use of alcoholic liquors, at the time of the alleged offense, it was claimed that appellant was suffering from a form of settled insanity called delirium tremens. This the court attempted to do in paragraph eleven of the charge as follows:

"You are further instructed that no person can be convicted for an offense committed while he was insane. Now if you find and believe from the evidence that the defendant on the occasion in question did kill Marion Smith by cutting and stabbing him with a knife as charged in the indictment, yet if you find that at the time of said killing, if any, that the defendant did not have sufficient mental capacity, resulting from the long continued use of alcoholic beverages, or from any other cause or any other form of insanity from any cause or combination of causes, to know the nature or consequences of the very act he was committing, if any, or, if he did not know the nature or consequences of the act, yet he did not know he was doing wrong, or did not know the difference between right and wrong as to the particular act charged against him in this cause, then you will find him not guilty on the ground of insanity, and you will let your verdict so say.

"The burden of proof is on the defendant to establish his plea of insanity by a preponderance of the evidence, and, if he has failed to do so you will find against him on this issue.

"By a preponderance of the evidence, as used in this charge, is meant the greater weight or degree of credible testimony."

While it is evident from the above that the words "delirium tremens" is not mentioned in the charge, nevertheless a state of possible facts is set forth, if found by the jury, that would constitute the form of insanity known as delirium tremens. We do not think the jury was confused by this charge defining, as it did, such a form of insanity. Nor do we think the liberality of the charge that gave appellant the benefit of an insanity defense from any other cause or combination of causes resulted in any extent to appellant's detriment. Regardless of what was the cause, appellant, if he was suffering from settled insanity from any cause, should not have been convicted, and the court so told the jury in such paragraph eleven, his plea being "not guilty" as evidenced by the judgment herein. Just previously, in paragraph ten, the trial court had properly instructed the jury on

the effect of temporary insanity produced by the recent use of intoxicating liquor, as provided by Art. 36, P. C.

Bill of exceptions No. 2 complains because it is said therein that the court improperly shifted the burden of proof from the State to appellant relative to the plea of insanity, as shown in the last paragraph of section eleven of the charge as above quoted. The burden of proof as shown by a preponderance of the testimony was rightfully placed upon appellant to show his insane condition. See 24 Tex. Jur., 415, 18 Tex. Jur., 19 and citations thereunder.

Bill No. 3 is concerned with a request for a peremptory instruction based, as it is, upon the statements of appellant as made at the time of the discovery of the dead body. True it is that appellant contended that some unknown person had made an assault upon him and he had killed such person in his own self-defense, such being the import of his written statement made on the morning following the night of the killing. The State had shown by circumstances and witnesses that appellant knew Marion Smith, the deceased, and was cognizant of his presence in the home of appellant; that they were drinking together; that appellant had closely contacted the body of deceased; that some one had dragged such body through a portion of the house, and kicked the same while it was lying in the doorway in its pants; that two parties were seen running about around the house; that one man was heard to call to the other "come here"; again one of the persons called to the other to "get up and come into the other room," and pushed such person with the foot of the one standing over such recumbent figure; another witness heard a voice that sounded like appellant's say "come back—come back here G - d you." There was blood all over, in the house, on the gallery, and a place in the yard where the flowers were pressed down. The deceased's glasses, teeth and pants were found in the house, and his body was found with his abdomen split open, covered with wounds and bruises, with no clothing on save his underclothes and socks, his trousers being found in the house turned wrong side out; there was blood on the gallery, and also in the house, on the door facing, and a trail of blood in the house as though some one had been dragged through the door. We think these facts were sufficient to show a killing by violence.

Appellant's defense was predicated upon but one theory, and that was his contention that he was suffering from the form of insanity known as delirium tremens, or mania a potu as the

older decisions call such disease. That while a temporary insanity produced by the recent use of ardent spirits is not a defense to crime, but can be used, if the jury so desire, in mitigation of the punishment, a settled insanity produced by a long continued use of such spirits is a full defense therefor.

Appellant proved by two psychiatrists, in answer to a hypothetical question embracing all the proven main facts, in the opinion of each of them, appellant was suffering from delirium tremens at the time of the killing of Marion Smith. The State produced Dr. Taylor, health officer of the City of Kaufman, as well as of the County of Kaufman, a physician of some thirty years experience, who was called to appellant's home early in the morning after the tragedy of the night, who examined the body of the deceased, as well as the appellant, and he testified that he observed the appellant at such time; that he heard him talking, saw him walking, and observed his actions at such time; that he thought he was sane, and seemed to be sober. The sheriff, Mr. Anderson, probably the first person at the scene of the killing, with fifteen years of experience as a peace officer, observed appellant at his home, and thought he was sane; to the same effect was the testimony of a deputy sheriff; also Mr. Nash, chief of police for Kaufman, was present at appellant's home the night of the killing; he talked with appellant and observed him, and through his twenty years of acquaintance with appellant he thought he was sane and sober, although he could smell whisky on his breath. There being such conflicting testimony present, we think the jury should have been allowed to decide this matter, and no peremptory instruction was called for.

Bill of exceptions No. 4 relates to the cross-examination of Dr. Slone, a psychiatrist, and without going into the particulars of the question objected to by appellant, we think such to have been a legitimate cross-examination of the witness as to the mental condition and mental ability of appellant at the time of the killing.

Bill of exceptions No. 5 relates to an argument of the district attorney wherein he stated: "that the defendant Hodge Thomas had dragged the old man's body over the yard and steps into the house." We think that the record justified such statement as a portion of the State's theory of this transaction, there being evidence of a large quantity of blood scattered over the house and on the gallery.

Bill of exceptions No. 6 relates to a question propounded by appellant to Dr. Slone on his re-direct examination, and is so vague and indefinite as to the testimony that was intended to be elicited by the question, that we can not appraise the same from such bill.

Bill of exceptions No. 7 relates to a statement made by the State's attorney when offering a written statement purportedly signed by appellant, and upon objection thereto the State's attorney stated: "If they insist upon their objection we will withdraw the confession of the defendant." Evidently the objectionable feature of this statement was the use of the word confession. We find at the latter end of the trial the following in the statement of facts: "Judge Crisp: Since seeing this statement the county attorney referred to as a confession, I am willing for it all to go before the jury." Then there was introduced before the jury a document entitled: "Voluntary Statement" containing the usual statutory warning and setting forth appellant's version of this homicide, and giving the details of the night's actions that culminated in the death of Marion Smith, a portion of such statement being introduced by the State, and the whole statement being introduced by appellant's attorneys. We fail to see any injury on account of the casual reference to such statement as a confession.

Bill of exceptions No. 8 complains of an argument of private prosecutor wherein he stated before the jury: "that he could see the defendant holding the old man's ears, referring to the deceased, with a perverted heart, seeking to subject him to his will." This argument was objected to for the reason that there was no testimony supporting such statement, nor was same a reasonable deduction from any testimony introduced upon the trial. We are not in accord with such objection. It was shown that two people was seen running about near the house; that one person called to the other "come here," some witness saying cursing was being used. Again, there was blood and gray hair found on a door casing; the appellant's shoes had blood and gray hair on them; the deceased's "ears were bruised and looked like they were pulled aloose from his head." A witness had seen a man's body lying partially in the doorway, which body had on dark pants; when found by the officers deceased's "body had on B.V.D's, socks and shoes, and his sock supporters, that is all he had on. The B.V.D's were open all the way down." It is also shown that the deceased's trousers were found inside the house turned wrong side out, the trousers having possibly been taken off after the body was seen lying in

the front door, clothed in dark pants as testified to by a witness. We think the complained of statement was deducible from the facts and circumstances shown as surrounding this transaction.

Bill of exception No. 9 complains of the court's charge in that when charging on murder without malice it is claimed that the trial court directed the jury "to find the defendant guilty of, at least, murder without malice," and said charge was upon the weight of the evidence.

In the preceding paragraph of the charge to the one complained of the court had charged the law of murder with malice; then in the paragraph under discussion he charged in substance that if the jury found appellant guilty of an unlawful killing, not in self-defense, but did not believe such was prompted by malice, then they should find him guilty of murder without malice, or if they had a reasonable doubt relative to the presence of malice, then such doubt should be resolved in appellant's favor, and they could give him no more than five years in the penitentiary. Again in the succeeding paragraph the court gave a charge on murder without malice. The charge then contained a paragraph on self-defense; on temporary insanity produced by the recent use of ardent spirits, and on settled insanity produced by long continued use of alcoholic liquors, though not denominating same as delirium tremens, as well as other paragraphs not the subject of objections. A charge of the court must be taken as a whole and judged from its entirety. No one paragraph can include all the constituent elements of an offense, nor usually all the constituent elements of a defense; and taking this charge as a whole, we think the same is a correct presentation of the law as applicable to these facts. See Vol. 2, p. 338, Vernon's Ann. Code of Criminal Procedure, Section 372, and cases cited.

We think the trial judge has carefully and properly tried this difficult case, and finding no error shown herein, the judgment is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for rehearing, seriously contends that we erred in our original disposition of this case in declining to sustain his contention that the trial court committed

an error in failing to submit to the jury an affirmative instruction on his defensive issue of insanity known as "delirium tremens" produced by the long continued use of ardent spirits. We have again reviewed the court's charge on the subject, which is copied in the original opinion, and remain of the opinion that it presents the law in an affirmative manner relative to the issue. The failure on the part of the trial court to use the words "delirium tremens" particularizing the type of insanity does not make it any less an affirmative instruction on that issue. The jury who heard the evidence pertinent to the issue of that type of insanity produced by the long continued use of ardent spirits could not have been misled by the court's instruction as to the type of insanity which the court had reference to in his charge.

Believing that the case was properly disposed of the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.